Caricati v Caricati (2020 NY Slip Op 01832)





Caricati v Caricati


2020 NY Slip Op 01832


Decided on March 13, 2020


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 13, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, LINDLEY, CURRAN, AND WINSLOW, JJ.


1296 CA 19-00634

[*1]ANTHONY CARICATI, PLAINTIFF-RESPONDENT,
v
PATRICIA MARY CARICATI, DEFENDANT-APPELLANT. 






HEISMAN NUNES & HULL LLP, ROCHESTER (RONALD G. HULL OF COUNSEL), FOR DEFENDANT-APPELLANT. 
MAUREEN A. PINEAU, ROCHESTER, FOR PLAINTIFF-RESPONDENT.


 Appeal from an order of the Supreme Court, Monroe County (John B. Gallagher, Jr., J.), entered September 19, 2018. The order, inter alia, determined the prenuptial agreement of the parties to be valid and enforceable. 
It is hereby ORDERED that the order so appealed from is unanimously affirmed without costs.
Memorandum: Defendant wife appeals from an order determining, after a hearing, that a prenuptial agreement between defendant and plaintiff husband was valid and enforceable. Contrary to defendant's contention, Supreme Court did not err in determining that defendant failed to meet her burden of establishing that her signature on the document was a forgery. "An agreement by the parties, made before or during the marriage, shall be valid and enforceable in a matrimonial action if such agreement is in writing, subscribed by the parties, and acknowledged or proven in the manner required to entitle a deed to be recorded" (Domestic Relations Law § 236 [B] [3]; see generally Matisoff v Dobi, 90 NY2d 127, 132 [1997]). "Under State law and general contract law, a forged signature renders a contract void ab initio . . . Because there can be no meeting of the minds of the parties when a forgery has been perpetrated, no contract exist[s]" in that instance (Orlosky v Empire Sec. Sys., 230 AD2d 401, 403 [3d Dept 1997]). Where, however, as here, "a document on its face is properly subscribed and bears the acknowledgment of a notary public, it give[s] rise to a presumption of due execution, which may be rebutted only upon a showing of clear and convincing evidence to the contrary" (Demblewski v Demblewski, 267 AD2d 1058, 1058 [4th Dept 1999] [internal quotation marks omitted]; see Paciello v Graffeo, 32 AD3d 461, 462 [2d Dept 2006], lv denied 8 NY3d 802 [2007]). At the hearing, the notary public whose signature was on the document testified that defendant, whom she personally knew, asked her to notarize a document for her, and she did. Although defendant denied that and even claimed that she had not seen the prenuptial agreement until a few months before the hearing, the court credited the testimony of the notary public. The court's determination was supported by other evidence in the record, including the testimony of an attorney that he prepared a prenuptial agreement for plaintiff. We therefore conclude that defendant failed to meet her burden of showing that her signature on the document was a forgery (see Paciello, 32 AD3d at 462; Demblewski, 267 AD2d at 1058).
Defendant further contends that, even if her signature was deemed authentic, the prenuptial agreement is unenforceable because the maintenance provision is no longer fair and reasonable. "It is well settled that duly executed prenuptial agreements are generally valid and enforceable given the strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements' " (Van Kipnis v Van Kipnis, 11 NY3d 573, 577 [2008]; see Bloomfield v Bloomfield, 97 NY2d 188, 193 [2001]). "[A] prenuptial agreement is accorded the same presumption of legality as any other contract . . . and the validity of such an agreement is presumed unless the party opposing the agreement comes forward with evidence [*2]demonstrating fraud, duress, or overreaching, or that the agreement or stipulation is . . . unconscionable" (Trbovich v Trbovich, 122 AD3d 1381, 1383 [4th Dept 2014] [internal quotation marks omitted]; see Taha v Elzemity, 157 AD3d 744, 745 [2d Dept 2018], lv dismissed 33 NY3d 1000 [2019]; Gottlieb v Gottlieb, 138 AD3d 30, 36 [1st Dept 2016], lv dismissed 27 NY3d 1125 [2016]). "An agreement is unconscionable if it is one which no person in his or her senses and not under delusion would make on the one hand, and no honest and fair person would accept on the other, the inequality being so strong and manifest as to shock the conscience and confound the judgment of any person of common sense" (Taha, 157 AD3d at 745 [internal quotation marks omitted]; see Ku v Huey Min Lee, 151 AD3d 1040, 1041 [2d Dept 2017]; Gottlieb, 138 AD3d at 47). " The burden of proof is on the party seeking to invalidate the agreement' " (Ku, 151 AD3d at 1041; see Taha, 157 AD3d at 746).
Domestic Relations Law § 236 (B) (3) (3) provides that a prenuptial agreement may include a provision for the amount and duration of maintenance "provided that such terms were fair and reasonable at the time of the making of the agreement and are not unconscionable at the time of entry of final judgment" (see Taha, 157 AD3d at 745-746). We conclude that defendant's contention is not preserved for our review inasmuch as she did not raise the issue of the alleged unconscionability of the maintenance provision. In any event, defendant did not meet her burden of proof on the issue (see generally Ku, 151 AD3d at 1041).
Defendant also contends that plaintiff breached the prenuptial agreement through his breach of fiduciary duty insofar as he allegedly manipulated the marital residence into his name alone, which would result in him receiving that property pursuant to the prenuptial agreement. That issue, however, was not before the court (see Colello v Colello, 9 AD3d 855, 859 [4th Dept 2004]).
Finally, defendant contends that the court abused its discretion in denying that part of a motion seeking attorneys' fees because she is the less monied spouse. We reject that contention. " [A]n award of [counsel] . . . fees pursuant to Domestic Relations Law § 237 (a) will generally be warranted where there is a significant disparity in the financial circumstances of the parties' " (Wilson v Wilson, 128 AD3d 1326, 1327 [4th Dept 2015]). Nevertheless, " [t]he decision to award . . . attorney[s'] fees lies, in the first instance, in the discretion of the trial court and then in the Appellate Division whose discretionary authority is as broad as [that of] the trial court[ ]' " (Haggerty v Haggerty, 169 AD3d 1388, 1391 [4th Dept 2019], quoting O'Brien v O'Brien, 66 NY2d 576, 590 [1985]). " [I]n exercising its discretionary power to award counsel . . . fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions' " (Wilson, 128 AD3d at 1327, quoting DeCabrera v Cabrera-Rosete, 70 NY2d 879, 881 [1987]; see § 237 [a]). We conclude that the court did not abuse its discretion in declining to award attorneys' fees to defendant, particularly considering the relative merit of the parties' positions, which favored plaintiff (see Dechow v Dechow, 161 AD3d 1584, 1585-1586 [4th Dept 2018]; Wilson, 128 AD3d at 1327).
Entered: March 13, 2020
Mark W. Bennett
Clerk of the Court